Kimberly R. Olson, In Pro Per
PO Box 243
Hornbrook, CA 96044
530-475-3669

**FILED**

MAR 17 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kimberly R. Olson,<br>    Plaintiff,<br><br>vs.<br><br>Law Office of Joseph M. Ahart, Inc.; Joseph M. Ahart, Esq.; Jacob Levin, Esq., and John Does 1-20<br><br>    Defendants, | Case No: 2 25 CU 876 DJC AC PS<br>**COMPLAINT**<br>**(JURY TRIAL REQUESTED)**<br>ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT; PENDENT STATE CLAIMS<br><br>USC 42 §§1983, 1985, 1986, 1988, and 12131-12134 |

**Introduction:** This is a civil rights action to vindicate Plaintiff **Kimberly R. Olson's** constitutional rights to due process and the effective assistance of counsel. Plaintiff is an indigent defendant in Siskiyou County who was appointed conflict counsel under a county contract with Defendant **Law Office of Joseph M. Ahart, Inc.** ("Ahart Inc."). Defendants **Joseph M. Ahart** (principal of Ahart Inc.) and **Jacob Levin** (an attorney acting under the contract) failed to provide constitutionally adequate legal representation, depriving Plaintiff of a fair proceeding. Under 42 U.S.C. § 1983 – originally enacted as §1 of the Ku Klux Klan Act of 1871 to empower individuals to sue state and local officials for violating constitutional rights.

Plaintiff seeks redress for Defendants' violations of her rights under color of state law. Plaintiff also brings state-law claims, including as an intended third-party beneficiary of the County's contract with Ahart Inc., which Defendants materially breached by providing grossly deficient and conflicted representation. This Complaint incorporates relevant legal precedents and legislative history demonstrating the fundamental nature of the rights at stake – from **Goldberg v. Kelly**'s due process protections in public welfare benefits to **Gideon v. Wainwright**'s recognition that counsel for the indigent is *"a fundamental right essential to a fair trial"* - as well as case law condemning government agent malfeasance and conflicts of interest in the administration of justice.

### Jurisdiction and Venue

1. **Jurisdiction:** This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 42 U.S.C. § 1983 for deprivation of rights secured by the U.S. Constitution, and The Americans with Disabilities Act ("ADA");. The Court has supplemental jurisdiction over Plaintiff's related state-law claims (e.g. breach of contract) under 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

2. **Venue:** Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District (Siskiyou County, California) and all Defendants reside or conduct business in this District.

### Parties

3. **Plaintiff:** Kimberly R. Olson is an individual residing in Siskiyou County, California. At all relevant times, Olson was an indigent defendant in a criminal matter in Siskiyou County Superior Court and thus entitled to court-appointed counsel at government expense. Plaintiff was the intended beneficiary of the County's indigent defense program and the contract described below, which was expressly made for the benefit of indigent defendants like her.

4. **Defendant Law Office of Joseph M. Ahart, Inc.:** Defendant Ahart Inc. is a California professional law corporation (or similar entity) that entered into a written agreement with the County of Siskiyou to provide "Conflict Indigent Defense Professional Services" for eligible indigent persons in Siskiyou County. The County's contract with Ahart Inc. tasked it with providing legal representation to indigent criminal defendants (and other parties requiring appointed counsel) in cases such as Olson's, where the primary public defender has declared a conflict of interest.

Under the contract, Ahart Inc. functioned as the County's *de facto* "alternate public defender" by engaging attorneys to represent indigent clients in criminal and other proceedings/ Ahart Inc. is sued as a person acting under color of state law for purposes of 42 U.S.C. § 1983, given that it was performing a traditional government function (providing constitutionally-mandated defense services) through a contract with a county government

Ahart Inc. is also sued on Plaintiff's state-law claims under respondeat superior/vicarious liability for the acts and omissions of its agents and employees, including Defendant Levin and others.

5. **Defendant Joseph M. Ahart, Esq.:** Defendant Ahart is an attorney licensed in California and the principal/officer of Defendant Ahart Inc. He signed or was responsible for the

contract with the County and was charged with overseeing and ensuring the contract's proper performance. At all relevant times, Joseph Ahart acted under color of state law by virtue of his role in administering a county contract for indigent defense – a public function – and by jointly engaging in the conduct complained of herein. He is sued in his individual capacity for his personal involvement in the constitutional violations and other wrongful acts described, including policy-making decisions or omissions that led to Plaintiff's deprivation of rights.

6.     **Defendant Jacob Levin, Esq.:** Defendant Levin is an attorney licensed in California who, upon information and belief, was retained or subcontracted by Ahart Inc. to represent Plaintiff Olson as her appointed conflict counsel. Levin was assigned to Plaintiff's case and acted as her court-appointed attorney. In doing so, he was performing a public defense function pursuant to the County's contract and court appointment, making him a state actor for §1983 purposes to the extent he willfully participated in the deprivation of Plaintiff's rights in collaboration with other state actors or under a position of public trust

Levin is sued in his individual capacity as the attorney whose direct acts and omissions violated Plaintiff's rights and breached legal duties owed to her.

<u>**Factual Allegations**</u>

A. Indigent Defense Contract in Siskiyou County and Plaintiff's Status as Intended Beneficiary

7.     Siskiyou County, like all California counties, is responsible for providing counsel to indigent individuals accused of crimes. In addition to a primary Public Defender's Office, Siskiyou County contracted with Defendant Ahart Inc. to handle cases where the Public Defender had a conflict of interest. The **Conflict Indigent Defense Professional Services Agreement** between the County and Ahart Inc. (the "Contract") was expressly for the benefit of indigent defendants requiring conflict-free representation

Under the Contract, Ahart Inc. agreed to provide qualified counsel for indigent clients at all stages of criminal proceedings (from preliminary hearing through trial and appeal in certain cases), and to do so in accordance with constitutional and professional standards

Plaintiff Olson, as an indigent defendant in a case where the Public Defender had to step aside, was a member of the class of persons the Contract was intended to protect. Pursuant to California Civil Code § 1559, **"a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties rescind it."**

Olson is thus an intended third-party beneficiary of the County–Ahart Inc. contract and entitled to enforce its provisions and expect its benefits.

8.      The Contract's terms underscore that its purpose was to ensure conflict-free, effective assistance of counsel. It requires Ahart Inc. and its attorneys to: (a) **remain free of conflicts of interest**, avoiding any financial or personal interests that would interfere with their defense of clients; (b) **represent clients zealously at all stages**, devoting all time reasonably necessary for diligent representation, including reviewing all discovery and conducting necessary investigations; (c) **maintain adequate communication and availability to clients**, including meeting when reasonably needed and returning client calls or communications within 24 hours ; and (d) abide by all professional standards, including the California Rules of Professional Conduct, in providing competent and loyal representation.

The Contract further provides that counsel shall not decline appointments except for a legal conflict, and if an unresolvable conflict arises, the Contractor must secure independent counsel at its own expense to avoid prejudice to the client. These provisions reflect the County's and public's interest in ensuring indigent defendants receive the same loyalty and quality of representation as if they had retained their own counsel – a recognition that the **"assistance of counsel" is guaranteed because it is essential to the fair functioning of the adversarial system.** Defendants Ahart and Levin were well aware of these obligations.

9.      Under the Contract, Ahart Inc. was paid a flat monthly fee by the County, regardless of the number of cases or the amount of work required. Specifically, the County agreed to pay Ahart Inc. approximately **$77,083.33 per month** (over $900,000 per year) during the contract term as a lump sum for all services, with separate fixed fees only for homicide cases This **flat-fee structure** created a risk of conflict between the financial interests of Ahart Inc. (and its attorneys) and the interests of individual clients. Every dollar or hour that Defendants spent investigating a case, contacting witnesses, or otherwise vigorously defending a client would effectively come out of their own pockets or time, since the compensation did not increase with effort. The Contract explicitly forbids the Contractor and its attorneys from acquiring any financial interest that conflicts with performance of their duties – a codification of the ethical duty that an attorney's personal compensation considerations must not detract from the client's defense. Despite this, the flat-fee arrangement inherently **pressured Defendants to minimize time and expenses on each case**, potentially at the expense of zealous advocacy. This structural conflict of interest forms part of the context of Plaintiff's claims: Defendants stood to financially

benefit by doing less for Ms. Olson, an incentive directly at odds with their duty to do everything necessary to defend her.

**B.** Plaintiff's Criminal Case and Appointment of Conflict Counsel

In or around 2021–2022, Plaintiff Olson became involved in a dispute with the Hornbrook Community Services District (HCSD) – a local public entity – and one of its officers, **Robert Puckett**, concerning her water service and related issues. This dispute led to multiple confrontations and incidents, including the **towing of vehicles from Plaintiff's driveway** and accusations that Plaintiff interfered with HCSD operations. Upon information and belief, Mr. Puckett (the HCSD Board President or agent) issued "violation" notices to Plaintiff outside the scope of his authority and enlisted the Siskiyou County Sheriff's Department's aid in seizing Plaintiff's property under questionable pretenses. Plaintiff had **previously filed numerous state and federal lawsuits** against the HCSD and Puckett (and possibly other County officials) challenging their actions. Rather than addressing Plaintiff's grievances through civil channels, **County officials (including County Counsel)** allegedly worked with Puckett to build a criminal case against Ms. Olson in retaliation for her outspoken opposition. Ultimately, the Siskiyou County District Attorney's Office filed criminal charges against Olson, believed to be related to the HCSD incidents (exact charges to be determined but including allegations of tampering with utility equipment or similar offenses). These charges effectively transformed a civil/local dispute into a criminal prosecution against Plaintiff.

Because Plaintiff had been adverse to the County (through her lawsuits) and possibly to the DA's office or County Counsel, and because the office refused to provide adequate representation, the **Public Defender's Office declared a conflict** and could not represent her in the criminal case. Accordingly, the court appointed conflict counsel pursuant to the County's contract with Ahart Inc. Initially, an attorney from Ahart Inc.'s network (**Joseph Ahart**) was appointed to represent Olson. Later, Defendant **Jacob Levin, Esq.** was substituted as Plaintiff's counsel of record under the conflict defense contract. By early-to-mid 2023, Defendant Levin was the attorney solely responsible for Plaintiff's defense, acting as an agent of Ahart Inc. and under Joseph Ahart's supervision.

From the outset of Levin's representation, **the attorney-client relationship was severely strained and ultimately broken**. Plaintiff, who is knowledgeable about her case and the surrounding circumstances, attempted to actively participate in her defense and provide Levin with extensive information, leads, and evidence. However, **Defendant Levin refused to communicate adequately and showed disdain for Plaintiff's input**. He failed to meet or

**confer with Ms. Olson in a timely and meaningful manner**, often not responding to her communications at all or only after long delays. This violated the Contract's requirement that counsel be available to clients and respond within 24 hours/

More importantly, it violated Plaintiff's right to effective assistance: the **breakdown in communication** was so acute that Plaintiff effectively had no meaningful counsel-client collaboration. In California, *"an indigent defendant represented by court-appointed counsel is entitled to discharge his or her counsel and substitute another appointed counsel if continued representation by the present counsel would substantially impair or deny the right to effective assistance of counsel, either due to a significant breakdown in communication or due to incompetence of counsel."* (citing *People v. Marsden*, 2 Cal.3d 118 (1970) and progeny). By mid-2023, Plaintiff had ample grounds for such a **Marsden motion** due to Levin's failures.

Not only was communication poor, but **Defendant Levin outright refused to consider crucial defense evidence and strategies**. In particular, Plaintiff informed Levin of her ongoing civil litigation against HCSD and Puckett, and explained how Puckett had acted *ultra vires* (beyond his lawful authority) in matters related to the charges. This information was highly relevant to challenge Puckett's credibility and to support a defense theory that the criminal case was a **maliciously motivated prosecution** spurred by Puckett (with the assistance of County officials) to retaliate against Olson. Shockingly, Levin told Plaintiff **to her face that he "would not listen to" anything related to her civil actions with the HCSD or its officers**, *"regardless of the potential to undermine the credibility of Puckett."*

In other words, Levin deliberately ignored evidence of a **government agent's malfeasance and bias** – even though such evidence could dramatically help the defense. This abdication cannot be justified as a strategic choice; it can only be explained by indifference or a conflict of interest. On information and belief, Levin's stubborn refusal was influenced by the fact that implicating County Counsel or HCSD officials in wrongdoing would be uncomfortable for an attorney whose very job came from a County contract. Defendants Ahart and Levin had a **built-in conflict of interest**: zealously advocating for Olson would require exposing misconduct by the County or its agents (Puckett and County Counsel), which could embarrass or implicate the very entities that pay and oversee Defendants' contract. Rather than fulfill their duty of loyalty to their client, Defendants protected their own and the County's interests at Plaintiff's expense – precisely the scenario the Contract's conflict-of-interest prohibition was meant to prevent

14.    In addition to disregarding Plaintiff's information, **Defendant Levin failed to perform even the most basic investigative and preparatory tasks that any reasonable attorney would undertake**. Plaintiff herself identified numerous factual avenues and evidence sources critical to her defense, yet Levin (and by extension Ahart Inc.) neglected almost all of them. By way of example, and not limitation, Defendants failed to:

**Obtain Key Records and Documents:** Plaintiff requested counsel obtain the Siskiyou County Sheriff's Department **policies and logs** regarding vehicle towing (to impeach an officer's claim of lawfully seizing multiple vehicles from her driveway) and the computer-aided dispatch (CAD) records from the Sheriff and CHP for the dates in question.

These were important to show whether proper procedure was followed or if Puckett overstepped. Levin did not secure these records.

**Issue Vital Subpoenas:** Plaintiff provided specific references for subpoenas to HCSD and Puckett seeking any **official Board authorizations (or lack thereof) for Puckett's actions**, HCSD Rules and Regulations (showing procedures Puckett ignored), Plaintiff's water usage logs (to refute claims of water theft), and records of any HCSD process for contesting Puckett's "violations". Such evidence could demonstrate Puckett acted outside his jurisdiction and targeted Plaintiff. Levin failed to pursue these subpoenas.

**Inspect Physical Evidence:** Plaintiff pointed out references in police reports to a **padlock on the water meter** and certain **handwritten notices** allegedly authored by her or Puckett and placed on her property.

She urged counsel to obtain photographs or the items themselves to verify their content and existence. Levin and/or Ahart did not do so.

**Obtain Exculpatory/Impeachment Evidence:** Perhaps most egregiously, Plaintiff alerted Levin to **correspondence suggesting collusion between Puckett and County Counsel (Dana Barton)** to prompt the DA to file charges

This is quintessential *Brady* material, as it shows bias and motive of the prosecution's chief witness. Under *Brady v. Maryland*, the prosecution must disclose – and the defense should certainly seek – any evidence favorable to the accused, including evidence that impeaches a state's witness

Emails or communications revealing that a County official (Barton) and Puckett had animosity toward Olson and orchestrated the case would greatly aid the defense. Yet Defendants

neither requested these communications in discovery nor subpoenaed them, effectively **burying evidence of government malfeasance**.

**Interview or Contact Witnesses:** Several defense witnesses were readily available who could testify on Plaintiff's behalf – for example, individuals who parked vehicles on Plaintiff's property (relevant to refuting any claim that she was solely responsible for their presence), or other HCSD customers who could testify to Puckett's behavior. Plaintiff had identified and even provided contact information for some of these witnesses. Levin however did **not bother to contact critical witnesses**. As Plaintiff noted, failing to interview key witnesses in a timely manner – especially when trial was only weeks away – **"falls below the minimum objective standard of reasonableness in representation"** under *Strickland v. Washington*, 466 U.S. 668 (1984)/

**Consult Experts or Pursue Expert Evidence:** If the case involved technical issues (for instance, water usage calculations or tampering allegations), an expert could rebut the prosecution's assertions. Plaintiff was open to such strategies, but Levin made no attempt to consult any expert, again likely to avoid expense to the firm at the cost of Olson's defense.

Defendants' inactions were not strategic decisions made after reasonable investigation; they were the result of **no investigation at all**, stemming from neglect, incompetence, or a deliberate unwillingness to advocate for Plaintiff. Under the standards of *Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."*

Here, Defendants neither investigated nor provided a valid reason for not doing so – he simply ignored avenues that any competent attorney would explore. Indeed, Plaintiff herself effectively did the legwork of spotting issues and suggesting defense strategies, but her appointed counsel **"failed to conduct even rudimentary investigation of this simple case; failed to contact the witnesses critical to any defense ... failed to make a serious effort to obtain documents and records that are exculpatory or which impeach the People's witnesses."**

By depriving themselves of the facts, Defendants deprived Olson of a defense. As Plaintiff aptly observed in a notice to Defendants, she was being **denied any opportunity to fully review evidence or obtain discovery, and denied the proper assistance of an investigator or expert,** because her counsel's failures foreclosed those possibilities

In short, Defendants' performance was a *constructive denial of counsel*: a lawyer who refuses to communicate, to investigate, or to advocate is no lawyer at all in any meaningful sense.

16. Throughout this period, Defendant Joseph Ahart, as head of Ahart Inc., **knew or should have known** that Plaintiff's case was not being handled to minimum standards. Either Mr. Ahart was directly informed of Plaintiff's complaints (Plaintiff sent formal letters or tort claim notices to the law office describing counsel's failures) or he failed to implement any oversight procedures to catch such glaring misconduct. The Contract required Ahart to ensure all subcontract attorneys "meet all constitutional, statutory, court rule, and case law requirements for legal counsel" and to provide substitute counsel if any attorney cannot effectively represent a client. Instead of correcting the situation – for example, by assigning a different conflict attorney or instructing Levin to do his job – Defendant Ahart allowed the violation of Plaintiff's rights to continue. On information and belief, Ahart's **motive in not intervening** was at least partly financial: to admit that Plaintiff needed a different attorney or additional resources would be to incur extra cost (hiring outside conflict-free counsel, as Section 1.G of the Contract mandates in certain conflicts) or to concede a breach of the contract performance standards. In this way, **Ahart ratified Levin's ineffective assistance**, making it a product of the policy or practice of Ahart Inc. to prioritize cost-savings (and deference to county officials) over zealous defense. This systemic failure implicates the County's indigent defense system as well, which **"raises questions about the effective provision of indigent defense in California"** when significant resource disparities or lack of oversight exist.

17. By the time of filing this Complaint, Plaintiff Olson's criminal case has been prejudiced by these failures. She has suffered ongoing injury: **prolonged legal jeopardy, anxiety, and the denial of a fair opportunity to defend herself**. Critical defense evidence may have gone stale or been lost due to Defendants' inaction. The prosecution, unchallenged by a competent adversary, has been given an unfair advantage. Plaintiff also suffered the **loss of property and enjoyment of her rights** during the period of unaddressed charges – for example, vehicles were taken and not returned promptly, and she faced restrictions typical for criminal defendants, all for a case that should have been aggressively rebutted. Moreover, Plaintiff has endured immense emotional distress, frustration, and a loss of trust in the justice system as a direct result of **appointed counsel effectively allying with her adversaries**. Indeed, as Plaintiff has alleged, this entire prosecution appears to be a **retaliatory effort** against her for exercising her rights to speak out and to petition (via her lawsuits) – a form of official misconduct that is "patently unconstitutional" (see *United States v. Goodwin*, 457 U.S. 368, 372 n.4 (1982), quoting

*Bordenkircher v. Hayes*, 434 U.S. 357, 363). Yet, rather than challenge that misconduct, Defendants stood by and thus became complicit in it.

18.     In summary, Defendants Ahart, Ahart Inc., and Levin – acting under color of state law through their public defense appointment – have **denied Ms. Olson the due process and fair trial safeguards that both state and federal law demand**. The U.S. Constitution forbids the government from depriving any person of liberty without due process of law, and guarantees equal protection of the laws (Fourteenth Amendment). It further guarantees the assistance of counsel in criminal prosecutions (Sixth Amendment), which is incorporated against the states. These principles mean that an indigent accused stands **"entitled to receive effective assistance from appointed counsel"** as a matter of fundamental fairness

Defendants' conduct – failing to act as diligent, loyal advocates – violated these constitutional guarantees. The following Causes of Action detail the legal claims arising from these facts.

### Causes of Action

**Count I – 42 U.S.C. § 1983: Deprivation of Right to Effective Assistance of Counsel (Sixth and Fourteenth Amendments) Against All Defendants**

19.     **Plaintiff incorporates** by reference all preceding paragraphs as though fully set forth herein.

20.     **Color of State Law:** At all relevant times, Defendants acted under color of state law. Defendant Ahart Inc. and its principal (Ahart) entered into a contract with a county government to perform the constitutionally-required public function of providing indigent defense services

Defendants were appointed by the state court under that contract to represent Plaintiff. Although defense attorneys are nominally adversarial to the state in a criminal case, they are endowed with official responsibility by virtue of the court appointment and contract, and here their challenged actions were not ordinary trial strategy but egregious non-performance intertwined with County interests. Moreover, Defendants **engaged in joint action with state officials and/or willfully yielded to the improper aims of state actors**, such that they became participants in the state's deprivation of Plaintiff's rights. Specifically, by aligning themselves with the interests of County officials (e.g. County Counsel Barton and witness Puckett) against their own client, and by accepting government funds while eschewing their duty, Defendants acted "under color of" state law within the meaning of §1983. Private parties who undertake public obligations or conspire with state actors are liable under §1983 (*West v. Atkins*, 487 U.S. 42 (1988)), and public defender contractors have no immunity when they engage in **"intentional**

misconduct" such as a *"conspiracy with state officials that deprives their client of federal rights."*

All Defendants, therefore, can properly be sued under §1983 for the conduct alleged.

**Violation of Right to Counsel:** The Sixth Amendment, applied to the states via the Fourteenth Amendment, guarantees that in all criminal prosecutions the accused shall enjoy the right to the assistance of counsel for her defense. It is long established that the **"right of an indigent defendant in a criminal trial to have the assistance of counsel is a fundamental right essential to a fair trial."** (*Gideon v. Wainwright*, 372 U.S. 335 (1963))

This means more than just having a warm body with a law degree nominally present – it means the right to **effective** assistance of counsel. *"The right to counsel is the right to the effective assistance of counsel."* (*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Counsel's performance must meet an objective standard of reasonableness; gross incompetence or a breakdown in representation violates the Sixth Amendment. In Plaintiff's case, Defendants so utterly failed to act as attorneys advocating for their client that they **constructively denied her the assistance of counsel at critical stages** of the case. Their performance, as described above, fell far below any reasonable professional standard: refusing to investigate obvious leads, ignoring the client's communications and evidence, failing to subpoena documents or interview witnesses, and effectively doing nothing to counter the prosecution. Such non-performance is the equivalent of having no counsel at all. Indeed, some of Defendants' defaults occurred *before* any trial – during pre-trial preparation – but the right to effective counsel extends to all stages, including investigation and plea negotiations. Plaintiff was left to fend for herself in developing a defense, while the appointed counsel obstructed or abandoned every effort. This deprived Plaintiff of her Sixth Amendment rights.

**Conflict of Interest & Loyalty Breach:** Additionally, the Sixth Amendment right includes the **right to conflict-free counsel**. An attorney burdened by an actual conflict of interest that adversely affects representation violates the Sixth Amendment (see *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). Here, Defendants labored under multiple conflicts: (a) a **financial conflict** inherent in their flat-fee contract (incentivizing minimal effort); and (b) a **conflict of loyalties** between zealously defending Olson versus maintaining favor with County officials (who had an interest in seeing Olson prosecuted and in not exposing misconduct by HCSD or County Counsel). Defendants "actively represented conflicting interests" – i.e., their own and the County's interest in a quick conviction or quiet resolution, versus Plaintiff's interest in a robust defense – and this **actual conflict adversely affected their performance** (they avoided lines of

defense that would embarrass the County, as detailed). In such circumstances, prejudice to the defendant is presumed. By failing to withdraw from representation or cure these conflicts, Defendants denied Plaintiff her right to loyal counsel.

23.  **Malfeasance by Government Agents:** The Sixth Amendment violation here is aggravated by the fact that it facilitated **misconduct by other government agents**. Plaintiff had a viable defense that the prosecution was initiated in bad faith or as retaliation by local officials. Had Defendants provided reasonable assistance, they would have brought this to light, potentially stopping an unconstitutional prosecution. Instead, their silence and inaction made them complicit in the officials' scheme to "penalize a person's reliance on her legal rights," conduct which is *"patently unconstitutional."*

By joining this course of action (even if by acquiescence), Defendants further acted under color of law to deprive Plaintiff of her rights.

24.  **Injury:** As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered harm including: deprivation of her liberty interests and rights to a fair proceeding; denial of a prompt and meaningful opportunity to contest the charges; prolonged emotional distress, anxiety, and uncertainty; damage to her legal position (lost evidence, unchallenged accusations); and other consequential harms as described in the facts. If not remedied, Plaintiff faces the very real prospect of an unjust conviction or other irreparable damage in her criminal case – the precise outcome the right to counsel exists to prevent. Even if the criminal case is still ongoing, the **violation of Plaintiff's rights is actionable now** because the constitutional injury (denial of counsel's effective assistance) has occurred and is causing ongoing damage. Plaintiff seeks both damages for these harms and appropriate injunctive relief (such as an order ensuring she receives conflict-free, competent counsel going forward, independent of Defendants).

25.  **Causation:** Defendants Ahart and Levin were the moving forces behind the deprivation of Plaintiff's Sixth Amendment rights. Levin directly failed to provide adequate representation. Ahart, as the contractor in charge, established and ratified policies (like taking on excessive caseloads with insufficient oversight, or prioritizing cost-saving) that caused the ineffective assistance. Ahart also failed to intervene or replace Levin when apprised of issues, amounting to deliberate indifference to Plaintiff's rights. Each Defendant thus caused or contributed to the violation.

26.  **Claim for Relief:** Plaintiff therefore claims that Defendants, acting under color of state law, violated her rights under the Sixth and Fourteenth Amendments to the U.S. Constitution. She is entitled to relief under 42 U.S.C. § 1983 in the form of compensatory damages (for

emotional distress, lost opportunities, and other injuries), and attorneys' fees and costs under 42 U.S.C. § 1988 (if applicable). Because this ongoing denial of rights is causing irreparable harm, Plaintiff also seeks declaratory and injunctive relief to protect her interests (such as an injunction removing Defendants as her appointed counsel and requiring the appointment of unconflicted, effective counsel, and a declaration that Defendants' conduct violated her rights). In addition, Plaintiff seeks punitive damages against the individual Defendants (Ahart and Levin) to punish and deter their willful indifference to her constitutional rights, as their conduct was intentional or recklessly indifferent to her federally protected rights.

**Count II – 42 U.S.C. § 1983: Deprivation of Fourteenth Amendment Due Process and Equal Protection Rights** Against All Defendants

**Plaintiff incorporates** by reference all preceding paragraphs as though fully set forth herein. (This Count overlaps in part with Count I but emphasizes distinct Fourteenth Amendment harms beyond the right to counsel itself.)

**Property/Liberty Interest and Due Process:** The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property without due process of law. When the state brings criminal charges against an individual, it threatens the person with loss of liberty (through potential incarceration) and other serious deprivations; thus, the process due is at its apex in criminal proceedings. One essential aspect of due process in this context is the right to a fair trial and a fair pre-trial process – which includes the right to present evidence, confront one's accusers, and have the case adjudicated based on reliable, tested evidence. Plaintiff Olson was effectively denied these due process rights when Defendants' actions rendered the adversarial process fundamentally unfair.

The Supreme Court has noted that the proper functioning of the adversarial process is critical to a fair trial, and counsel's role is to ensure that process works to produce just results. By abandoning their role, Defendants tilted the process in favor of the prosecution, depriving Plaintiff of an impartial and reliable proceeding. In essence, Plaintiff was deprived of her **liberty interest in a fair legal process**. For example, she was subjected to onerous pre-trial conditions and the stigma of criminal charges without having had a fair chance to clear her name, which itself is a deprivation of liberty (freedom from unwarranted government accusation and restraint) without due process.

Moreover, Plaintiff has a **property interest** in certain benefits and rights which have been adversely affected by the pending criminal case. For instance, if Plaintiff was receiving any public assistance or welfare benefits, a criminal charge or conviction could jeopardize those (this

1   is a potential inference, given the reference to "welfare law" in the context of due process – e.g.,

2   some benefits can be cut off for those accused or convicted of crimes). Even if not, Plaintiff's

3   property (such as her vehicles) was seized in connection with the allegations, effectively

4   depriving her of property. Due process requires that such deprivations be accompanied by proper

    procedures. The collusion between Puckett and County officials to tow her vehicles and instigate

5   charges, combined with her counsel's failure to challenge those actions, resulted in Plaintiff

6   losing property rights without the ordinarily required safeguards (notice, hearing, impartial

7   review). This is analogous to the welfare benefits context in *Goldberg v. Kelly*, where the

8   Supreme Court held that recipients of government aid must be afforded an evidentiary hearing

    before being cut off.

9   Here, Plaintiff was entitled to a full and fair adversarial hearing before being effectively stripped

10  of her rights and property; Defendants' abdication ensured she did not get one.

29.     **Fundamental Fairness:** The concept of due process also embodies the idea of

12  *fundamental fairness*. Government actors (including those acting in concert with the

    government) may not engage in conduct that "shocks the conscience" or undermines the integrity

13  of the judicial process. By allegedly cooperating with a retaliatory prosecution and failing to

14  subject the state's case to meaningful testing, Defendants allowed the process to be used as a tool

15  of harassment and retribution against Plaintiff, rather than a quest for truth. This offends due

16  process. Had the justice system functioned correctly, the serious questions about the legitimacy

    of the charges would have been raised and addressed; instead, those questions were suppressed.

17  Due process also demands that conflicts of interest in judicial proceedings be minimized – for

18  example, judges must recuse themselves when biased, and prosecutors must recuse if they have

19  personal stakes. Similarly, a defense system structurally tainted by conflicts (as here) can result

20  in a due process violation to the accused, because the fairness of the proceeding is compromised.

    Plaintiff alleges that the *entire arrangement* – a flat-fee contract with insufficient safeguards,

21  resulting in her essentially not receiving genuine advocacy – is a systemic due process violation.

22  In other words, Siskiyou County's method of providing conflict counsel in her case failed to

23  meet the constitutional floor for fairness, and Defendants were direct participants in that failure.

30.     **Equal Protection:** The Equal Protection Clause of the Fourteenth Amendment

25  guarantees that a state will not deny any person the equal protection of the laws. Indigent

    defendants as a class are entitled to equal and non-discriminatory treatment in the criminal

    justice system. While not explicitly a "suspect class," poverty cannot be an excuse to provide

    substandard justice. The U.S. Supreme Court has emphasized equality principles in criminal

justice – for example, in *Griffin v. Illinois* (1956) and related cases, holding that a state cannot discriminate against indigent defendants (such as by denying transcripts or counsel on appeal due to inability to pay). Here, Plaintiff – solely because of her indigency – was relegated to a deficient defense program that a paying defendant would never tolerate. A defendant of means could hire competent counsel who would pursue all exculpatory evidence and fully advocate their cause. Plaintiff, by contrast, was effectively left with **no meaningful advocacy**, a disparity that offends equal protection. The State (through the County's contract and the court's appointment) owed Plaintiff the same quality of representation in substance that others receive, at least to the extent of basic competency. By failing to ensure that, Defendants (as state actors) denied her equal protection of the laws. In addition, there is an **element of arbitrariness and vindictiveness** in how Plaintiff was treated: because she had previously sued the HCSD (exercising her First Amendment right to petition) and because she was an outspoken critic, she was arguably targeted for harsher treatment. If her appointed counsel joined in this targeting (by ignoring her cases against HCSD and thus implicitly validating the retaliation), it contributed to a denial of equal protection – she was not treated as other defendants would be, but rather worse, due to an irrational and punitive motive (i.e., punishing her for protected activity).

31.    **Injury and Damages:** The injuries described in Count I are equally applicable here. Plaintiff has suffered a deprivation of due process and equal protection in that the legal process against her has been fundamentally unfair and biased. She has suffered tangible losses (property, money, opportunities) and intangible harms (stress, reputational damage, emotional distress) as a result. These deprivations were caused by the joint and several conduct of Defendants, alongside other state actors. Plaintiff seeks the same relief under this Count via §1983: compensatory damages, declaratory judgment that her due process rights were violated, and injunctive relief as needed to prevent further irreparable harm. She also seeks punitive damages against the individual Defendants for their willful or reckless disregard of her Fourteenth Amendment rights.

**Count III – Breach of Contract (Third-Party Beneficiary Liability)**
**Against Defendants Law Office of Joseph M. Ahart, Inc. and Joseph M. Ahart, Esq.**

33.    **Plaintiff incorporates** by reference all preceding paragraphs as though fully set forth herein.

34.    **Contract and Beneficiary Status:** As detailed, the County of Siskiyou and Defendant Ahart Inc. entered into a written **Conflict Indigent Defense Professional Services Agreement** ("the Contract"). The Contract was expressly intended to benefit indigent criminal defendants requiring appointed counsel in conflict cases – a fact evident from the contract's recitals and

provisions obligating Defendants to provide legal representation to that class of persons (referred to as "Clients")

file-eyzxmjexgvh7t8bxmiscqq

. Plaintiff Olson, as an indigent defendant whom the Siskiyou County Superior Court appointed conflict counsel under this program, is an intended **third-party beneficiary** of the Contract. Under California law (Cal. Civil Code § 1559), such an intended beneficiary has the right to enforce the Contract's promises.

.       The Contract had not been rescinded and was in effect during the events in question, so Plaintiff's third-party beneficiary rights are vested.

35.       **Contractual Obligations Owed to Plaintiff:** The Contract imposed numerous duties on Ahart Inc. (and by extension, its principal and agents) for the benefit of clients like Plaintiff. These included, without limitation:

a. **Provision of Competent, Diligent Representation:** Contractor must ensure that appointed attorneys represent clients at all stages of the case and devote all time reasonably necessary for diligent representation, including reviewing discovery, conducting necessary investigation, and preparing for hearings and trial.  Additionally, Section 17 "Performance Standards" required adherence to professional standards (California Rules of Professional Conduct, etc.), meaning counsel must act competently and effectively

b. **Avoidance of Conflicts of Interest:** Section 18 forbade the Contractor and its subcontractors from having any financial or other interest that would conflict with performing their duties under the Contract.  It also required that case assignments be managed to avoid any legal conflict of interest among attorneys or between the contractor and clients.

.       Implicitly, this obligated Ahart Inc. to provide conflict-free counsel and to address any situation where an attorney's other loyalties (financial or personal) could impair the client's representation.

c. **Communication and Availability:** Subsection O required that Contractor and attorneys be reasonably available to meet with clients during business hours and that they return client communications within 24 hours.  This was to ensure clients remained informed and could participate in their defense -- a key aspect of effective assistance.

d. **Adequate Preparation and Use of Ancillary Services:** The contract (and incorporated Request for Proposals/Proposal) presumably required that counsel make use of investigators, experts, and other ancillary services where necessary, as the contract provided for reimbursement of such expenses.

. Implicitly, failing to use any such services in a case that clearly needed it (to gather evidence or expert analysis) would fall short of the promised level of service.

**e. Compliance with Law and Preservation of Client's Rights:** By agreeing to meet "all constitutional, statutory, court rule, and case law requirements for legal counsel", the Contractor promised that attorneys would, for example, file necessary motions, raise appropriate defenses, and not waive important rights of the client. This includes compliance with *Brady* obligations (to request and obtain exculpatory evidence) and state law duties (such as moving to withdraw if a Marsden situation arises, etc.).

36.     **Breach:** Defendants Ahart Inc. (and Ahart as its alter ego/representative) materially **breached the Contract** through the acts and omissions of their agents (including Levin) as described. These breaches include:

**Failure to provide diligent, competent representation:** Rather than devote the necessary time and effort, Defendant Levin performed virtually no meaningful defense work, as outlined in detail above. He failed to review or act on significant discovery (e.g., ignoring entire lines of evidence provided by Plaintiff), failed to investigate facts, and failed to prepare for trial in any coherent way. This contravenes the explicit duty to *"devote all the time reasonably necessary for the diligent fulfillment of the duties of legal counsel"*

By leaving major tasks undone (no witness interviews, no document gathering, no motions filed), Defendants did not perform in accordance with professional standards or the contract's requirements. Section 17's mandate to adhere to professional standards was breached by the objectively unreasonable representation rendered (falling below the standard of care for defense counsel).

**Violation of conflict-of-interest provisions:** Defendants breached Section 18 by allowing their financial and personal interests to interfere with Plaintiff's case. The flat-fee payment arrangement created a motive to minimize work, and in Plaintiff's case Defendants succumbed to that motive – they avoided incurring costs for investigators or experts, and avoided time-intensive tasks, thereby preserving their fee at the cost of Plaintiff's defense. This is precisely the type of conflict Section 18 prohibits (a "financial interest…that…conflict[s] in any manner…with the performance of the work".

Additionally, Levin's deference to County officials' interests (refusing to pursue evidence involving County Counsel or HCSD because it would ruffle feathers) reflects a **personal interest in not alienating the County** that conflicted with Plaintiff's defense. Ahart Inc. was obligated to ensure conflict-free representation, but it failed to do so and failed to obtain

independent counsel when a clear conflict arose (i.e., when Levin would not pursue leads involving County misconduct). Thus, the contract's conflict-of-interest provisions were breached.

**Failure to communicate and be available:** Levin's inattention to Plaintiff – not communicating for long periods, failing to return calls or emails promptly (if at all), and not meeting with her adequately – breached subsection O of the Contract.

Plaintiff was kept in the dark about developments and had to chase her attorney for responses, if she got any. By the contract, 24-hour responsiveness was required; in reality, Plaintiff experienced extended silence, violating the agreed standard of service.

**Overall failure to meet constitutional and legal requirements:** The contract specifically integrated the requirement to meet constitutional requirements for counsel

As argued in Counts I and II, Defendants failed to meet those constitutional requirements. That failure is not only a tort and constitutional violation, but also a breach of the contract promise that counsel provided under the contract would meet such requirements. For example, *Marsden* and related California cases (a legal requirement) state that if an attorney-client relationship has broken down, new counsel should be appointed

Plaintiff effectively made known her issues, yet Ahart Inc. neither provided new counsel nor remedied the situation, violating the contract's implied promise to follow such law. Similarly, by not pursuing Brady material or by effectively waiving issues, Defendants failed to comply with case law requirements for defense counsel – another breach of contract.

**Other breaches:** To the extent the contract required periodic reporting or oversight by Ahart Inc., the fact that Levin was allowed to neglect Plaintiff's case suggests Ahart Inc. failed to properly monitor and supervise its subcontractor, which may separately breach any contractual duty to manage the contract attorneys. (For instance, if Ahart Inc. was required to ensure quality control or replace attorneys not performing, its failure to do so in Olson's case is a breach.)

37.    **Third-Party Enforcement:** Plaintiff Olson, as the beneficiary, is entitled to enforce the contract against the Contractor (Ahart Inc.) and, as appropriate, against Ahart as the individual who executed and directed performance of the contract. Ahart is personally liable for the corporation's breaches under theories that may include him being the alter ego of the closely-held corporation or because he personally participated in tortious conduct accompanying the breach. At minimum, the corporate defendant Ahart Inc. is liable for the contract breaches.

38.    **Causation and Damages:** Defendants' breaches of the contract caused Plaintiff to suffer harm. The contract was intended to protect Plaintiff from exactly what happened – receiving an

inadequate defense. Because of the breaches, Plaintiff lost the benefit of the bargain: she was entitled to conflict-free, competent legal representation, but did not receive it. As a result, she incurred damages including (a) the **cost of having to represent herself or attempt to spur her defense from the sidelines** (for example, Plaintiff expended great personal effort and worry in trying to fill the gap left by counsel, and she may have to incur costs to obtain legal documents or advice that should have been provided under the contract); (b) **legal detriment in her criminal case** (the case was not dismissed when it might have been, evidence that could have exonerated her was not gathered – potentially making her defense harder or exposing her to conviction or a less favorable outcome, which carries financial and personal costs); (c) **emotional distress and mental anguish** (while contract damages typically focus on economic loss, in the context of a contract for legal services, the foreseeable result of a breach is often anxiety, mental suffering, and personal hardship for the client – these damages may be recoverable as consequential damages for breach of a duty so tied to personal interests, or via tort as discussed below); and (d) **possible increased exposure to criminal penalties**, which, if any result, would be a direct consequence of not receiving the promised service (though Plaintiff maintains her innocence, the breach increased the risk of an unjust conviction or other penalties). Plaintiff estimates her economic damages in an amount to be proven at trial (including any fees paid or financial losses due to the delayed and impaired case), and her general damages for emotional distress also according to proof. Additionally, because this breach of contract was **wanton and willful** (the failures were flagrant and Defendants were alerted and chose not to cure), Plaintiff may seek punitive or exemplary damages pursuant to California Civil Code § 3294, to the extent the breach overlapped with tortious conduct (e.g. a deliberate failure to fulfill duties with malice towards Plaintiff's rights).

39.     **Attorneys' Fees:** Although Plaintiff is currently pro se (effectively), if she secures counsel or incurs legal fees to enforce the contract, she will seek attorneys' fees as allowed by law. The Contract itself has an attorneys' fees clause for enforcement (to be confirmed – many contracts do; if so, she invokes it). If not, fees may still be recoverable under California's private attorney general doctrine or as damages for having to protect her rights due to the breach.

40.     **Specific Performance or Injunction:** In addition to damages, Plaintiff seeks, as appropriate, specific performance or injunctive relief on the contract. Specifically, she seeks an order that Ahart Inc. **cease further representation of indigent defendants in a manner that violates the contract**, and possibly an order requiring the County to be notified of the breach (so that corrective action can be taken for her and others). As to her individual case, specific

performance in the form of providing her conflict-free, competent counsel (not associated with Defendants) at the Contractor's expense would be an equitable remedy consistent with Section 1.G of the Contract (requiring Contractor to pay for independent counsel if neither it nor its subs can ethically represent the client)

The Court's equitable powers can enforce that term by ordering Ahart/Ahart Inc. to secure and fund independent counsel for Olson going forward, to mitigate the harm from the breach. *(If additional state-law causes of action are deemed appropriate by the Court, such as professional negligence/legal malpractice or breach of fiduciary duty, Plaintiff would amend to allege them. For now, she emphasizes the contract claim as a vehicle for relief, noting that the same facts may support tort claims. For completeness: Defendants owed Plaintiff a duty of care and loyalty as her attorneys; their extreme departure from the standard of care caused her harm, constituting legal malpractice. However, Plaintiff understands that pursuing such a claim may require a showing of innocence or post-conviction relief under California law. To the extent that requirement is inapplicable because she has not been convicted or because her claim is constitutional in nature, she reserves the right to assert a malpractice or fiduciary-duty claim. Defendants' conduct (favoring their interests over Plaintiff's) also breached their fiduciary duty of loyalty, giving rise to a tort action for which Plaintiff seeks punitive damages. These theories overlap with the §1983 claims, and Plaintiff will not double-recover but pleads them in the alternative.)*

**Prayer for Relief**

WHEREFORE, Plaintiff Kimberly R. Olson prays that this Court enter judgment in her favor and against Defendants, and grant the following relief:

**A. Declaratory Relief:** A declaration that Defendants' acts and omissions violated Plaintiff's rights under the U.S. Constitution (Sixth Amendment right to effective assistance of counsel; Fourteenth Amendment due process and equal protection) and breached the County's indigent defense contract for which Plaintiff was an intended beneficiary.

**B. Injunctive Relief:** Preliminary and permanent injunctive relief as necessary to protect Plaintiff's rights and ensure she receives a fair adjudication of the charges against her. This may include, but is not limited to: (1) an order enjoining Defendants Ahart and Levin from further representing Plaintiff in the criminal case (given the demonstrated conflict and ineffectiveness); (2) an order requiring Defendants to facilitate the transition to new conflict-free counsel, including turning over Plaintiff's case file immediately and cooperating with successor counsel; (3) an order requiring Defendants to pay for or bear the cost of any reasonable expenses

necessitated by their replacement (consistent with their contractual obligation to cover the cost of independent counsel if they have a conflict

file-eyzxmjexgvh7t8bxmiscqq

); and (4) broader injunctive relief against Ahart Inc. to prevent future violations (such as requiring improved oversight, or, if appropriate, enjoining it from accepting new appointments until it can ensure compliance with constitutional standards).

**C. Compensatory Damages:** An award of damages in an amount to be determined at trial, including but not limited to: damages for emotional distress, mental anguish, and loss of enjoyment of life; damages for any loss of property or money caused by Defendants' actions (e.g., value of property seized or not returned, costs incurred due to delays or to do what counsel failed to do, etc.); and any other pecuniary losses proximately resulting from Defendants' misconduct. Although the precise amount is to be proven, Plaintiff estimates these damages to be in the several hundreds of thousands of dollars, given the significance of the rights at stake and the harm suffered.

**D. Punitive Damages:** An award of punitive and exemplary damages against the individual Defendants (and against the corporate defendant to the extent permitted by law) for their willful, wanton, and reckless disregard of Plaintiff's rights and their egregious misconduct. Defendants' actions were taken with conscious disregard for Plaintiff's constitutional and contractual rights, justifying an award to punish and deter such conduct. Plaintiff seeks punitive damages in an amount sufficient to punish Defendants (suggested at least $... (to be determined) for each individual Defendant, subject to proof of their financial condition).

**E. Attorneys' Fees and Costs:** An award of reasonable attorneys' fees and litigation costs incurred by Plaintiff in this action, pursuant to 42 U.S.C. § 1988 (for the §1983 claims) and any applicable contract provision or state law basis (for the contract claim). Although Plaintiff is self-represented at the time of filing, to the extent she later retains counsel or otherwise becomes eligible for fees, or to the extent fees can be awarded for pro se work (if allowed in civil rights cases for attorney-plaintiffs, etc.), she seeks such fees. Additionally, all costs of suit should be awarded.

**F. Any further relief** the Court deems just and proper, whether at law or in equity, including measures to undo the prejudice to Plaintiff's defense (such as a court-supervised evidentiary hearing in her criminal case to consider the effects of prior counsel's failures, if within the Court's power, or coordination with state courts for relief).

Plaintiff demands a jury trial on all issues so triable.

necessitated by their replacement (consistent with their contractual obligation to cover the cost of independent counsel if they have a conflict

); and (4) broader injunctive relief against Ahart Inc. to prevent future violations (such as requiring improved oversight, or, if appropriate, enjoining it from accepting new appointments until it can ensure compliance with constitutional standards).

**C. Compensatory Damages:** An award of damages in an amount to be determined at trial, including but not limited to: damages for emotional distress, mental anguish, and loss of enjoyment of life; damages for any loss of property or money caused by Defendants' actions (e.g., value of property seized or not returned, costs incurred due to delays or to do what counsel failed to do, etc.); and any other pecuniary losses proximately resulting from Defendants' misconduct. Although the precise amount is to be proven, Plaintiff estimates these damages to be in the several hundreds of thousands of dollars, given the significance of the rights at stake and the harm suffered.

**D. Punitive Damages:** An award of punitive and exemplary damages against the individual Defendants (and against the corporate defendant to the extent permitted by law) for their willful, wanton, and reckless disregard of Plaintiff's rights and their egregious misconduct. Defendants' actions were taken with conscious disregard for Plaintiff's constitutional and contractual rights, justifying an award to punish and deter such conduct. Plaintiff seeks punitive damages in an amount sufficient to punish Defendants (suggested at least $... (to be determined) for each individual Defendant, subject to proof of their financial condition).

**E. Attorneys' Fees and Costs:** An award of reasonable attorneys' fees and litigation costs incurred by Plaintiff in this action, pursuant to 42 U.S.C. § 1988 (for the §1983 claims) and any applicable contract provision or state law basis (for the contract claim). Although Plaintiff is self-represented at the time of filing, to the extent she later retains counsel or otherwise becomes eligible for fees, or to the extent fees can be awarded for pro se work (if allowed in civil rights cases for attorney-plaintiffs, etc.), she seeks such fees, and all costs of suit.

**F. Any further relief** the Court deems just and proper, whether at law or in equity, including measures to undo the prejudice to Plaintiff's defense (such as a court-supervised evidentiary hearing in her criminal case to consider the effects of prior counsel's failures, if within the Court's power, or coordination with state courts for relief). Plaintiff demands a jury trial.

Respectfully submitted,

**Kimberly R. Olson, Plaintiff Pro Se**

*Kimberly R. Olson*
*3/14/25*